Pro Se 14 (INND Rev. 2/20)                                                                    page 1

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

[This form is for prisoners to sue for civil rights violations. _NEATLY_ print in ink (or type) your answers.]

**FILED**

01/31/2024 ISP

**U.S. DISTRICT COURT**
NORTHERN DISTRICT OF INDIANA
Chanda J. Berta, Clerk of Court

George Wilson
[You are the **PLAINTIFF**, print your full name on this line.]

v.

Ron Neil et. al
[The **DEFENDANT** is who you are suing. Put _ONE_ name on this line. List _ALL_ defendants below, including this one.]

Case Number ___3:24-cv-96___
[For a new case in this court, leave blank.
The court will assign a case number.]

[The top of this page is the caption. Everything you file in this case must have the same caption. Once you know your case number, it is _VERY IMPORTANT_ that you include it on _everything_ you send to the court for this case. _DO NOT_ send more than one copy of anything to the court.]

## PRISONER COMPLAINT

| # | Defendant's Name and Job Title | Work Address | |
|---|---|---|---|
| 1 | [Put the defendant named in the caption in this box.] <br> see Attached | | |
| 2 | [Put the names of any other defendants in these boxes.] <br> see Attached | | |
| 3 | see Attache | | |

[If you are suing more defendants, attach an additional page. Number each defendant. Put the name, job title, and work address of each defendant _in a separate box_ as shown here.]

1. How many defendants are you suing? ___9___

2. What is the name and address of your prison or jail? ___Indiana State Prison___

_____

3. Did the event you are suing about happen there? ☒ Yes.  ◯ No, it happened at: _____

_____

4. On what date did this event occur? ___February 8, 2022___

_____

[_DO NOT_ write in the margins or on the back of any pages. Attach additional pages if necessary.]

Pro Se 14 (INND Rev. 2/20)                                                                    page 2

## CLAIMS and FACTS

DO: Write a short and plain statement telling what each defendant did wrong.

DO: Use simple English words and sentences.

**DO NOT**: Quote from cases or statutes, use legal terms, or make legal arguments.

DO: Explain when, where, why, and how each defendant violated your rights.

DO: Include every fact necessary to explain your case and describe your injuries or damages.

DO: Number any documents you attach and refer to them by number in your complaint.

**DO NOT**: Include social security numbers, dates of birth, or the names of minors.

DO: Use each defendant's name every time you refer to that defendant.

DO: Number your paragraphs. [*The first paragraph has been numbered for you.*]

1. _____

_____

_____

SEE ATTACHED

[*DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.*]

Pro Se 14 (INND Rev. 2/20)                                                                                  page 3

Claims and Facts (continued)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*[DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]*

Pro Se 14 (INND Rev. 2/20)                                                                                    page 4

5. When did this event happen?
   ◯ Before I was confined.
   ◯ While I was confined awaiting trial.
   ⊗ After I was convicted while confined serving the sentence.
   ◯ Other: _____

6. Have you ever sued anyone for this exact same event?
   ⊗ No.
   ◯ Yes, attached is a copy of the final judgment OR an additional sheet listing the court,
      case number, file date, judgment date, and result of the previous case(s).

7. Could you have used a prison grievance system to complain about this event?
   ◯ No, this event is not grievable at this prison or jail.
   ⊗ Yes, I filed a grievance and attached is a copy of the response from the final step.
   ◯ Yes, this event was grievable, but I did not file a grievance because _____

   Grievance Special did not follow Policy and procedure. A copy
   grievance that I filed were rejected and Not given Number, Marked
   out of time line, or that I did not receive an appeal to

8. If you win this case, what do you want the court to order the defendant(s) to do?
   [NOTE: A case filed on this form will not overturn your conviction or change your release date.]

   To order the Defendants to return my A.M. and P.M. Shower.
   To stop all forms of harrassment.
   To give my contact visits back

   _____
   _____

[Initial Each Statement]
   X   I will pre-pay the filing fee OR file a prisoner motion to proceed in forma pauperis.
   X   I will keep a copy of this complaint for my records.
   X   I will promptly notify the court of any change of address.
   X   I WILL NOT send more than one copy of any filing to the court.
   X   I WILL NOT send summons, USM-285, or waiver forms to the clerk.
   X   I declare under penalty of perjury that the statements in this complaint are true.

   I placed this complaint in the prison mail system on  1 / 23 /20 24  at  12:40  am/pm.
      [Do not fill in this date and time until you give the complaint to prison officials to send to the court.]

   George Wilson                                    918837
   Signature                                        Prisoner Number

      [DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]

FILED

01/31/2024 ISP

U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
Chanda J. Berta, Clerk of Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

GEORGE W. WILSON,
      Plaintiff,

            V.

Nancy Marthakis, Alisha Winn,
RON NEIL, PAMELA BANE,
RICHARD ARNOLD, ANDREW
BAUER, ANDREW LAGUNAS,
VENCENT McCORMICK, Marshall
Sanders.       Defendants

CASE NO. _____3:24-cv-96_____

COMPLAINT CIVIL ACTION
I

1. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under the color of state law, of rights by the Constitution of the United States. The Court has jurisdiction 28 U.S.C. Section 1331 and 1343 (a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2. The NORTHERN DISTRICT OF Indiana is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events giving rise to this claim occurred.

II PLAINTIFF

3. Plaintiff George W. Wilson is and was at all times mentioned herein a prisoner of the state of Indiana in the custody of the

(1)

Indiana Department of Corrections. He is currently confined in Indiana State Prison (ISP), in Michigan City, Indiana.

## III DEFENDANTS

· 4. Defendant Ron Neil is Warden of Indiana State Prison (ISP). He is legally responsible for the operation of ISP and for the welfare of all the inmates in that prison.

· 5. Defendant Pamela Bane is a Unit Team Manager of "I" cellhouse (ICH) and at all times in this complaint employed an employed as such at the Indiana State prison.

· 6. Defendant Richard Arnold is a Sargent, a Correctional Officer at ISP who at all times mentioned in this complaint was a prison guard at ISP

· 7. Defendant Andrew Bauer is a Correctional Officer of the Indiana Department of Corrections who, at all times mentioned in this complaint, held the rank of Sargent (Sgt.) and was assigned to ISP.

· 8. Defendant Andrew Lagunas is a Correctional Officer of the Indiana Department of Corrections who, at all times mentioned in this complaint, held the rank of Sargent (Sgt.) and was assigned to ISP.

· 9. Defendant Vincent McCormick is a Correctional Officer of the Indiana Department of Corrections who, at all times mentioned in this complaint, held the rank of Lieutenant (Lt.) and was assigned to ISP.

· 10. Defendant Nancy Marthakis is a Medical Doctor at ISP employed by a private company to give medical care to all inmate in ISP who at all times mentioned in this compliant

11. Defendant Ali'sha Winn is a Correctitional Officer of the Indiana Department of Correction who, at all times mention in this complain held the rank of Leutenart and was assigned to ISP

12. Defendant Marshall Sanders is a Correctional Officer of the Indiana Department of Correction who, who at all times Mentioned in this complaint a prison guard at ISP.



IV FACTS

1.   Plaintiff is a elder person, 71 years of age presently. I say this because I want the Court to know that the events I am about to describe were much more devastating to me than they would be to a younger person.

2. For the most part I am in a wheelchair because I have advance stages of Osteoarthrites in both ankles, both knees, lower back, right hip, both shoulder, neck, right wrist and many of my fingers from practicing martial arts for over fifty years. I also use a cane for very short distances which does not happen often.

3.  I am a qualified individual under the American with Disability Act and the Rehabilitation Act.

4.  I also have a chronic care problem with having skin erruptions and take two showers per day, once in the A.M and once in the P.M.. The cellhouse Lieunants in every cellhouse allow me to shower in the P.M. to help combat a rash I've had been having for over six years before the events and facts I am about to describe; however, my P.M. showers are conviently taking away by the as harassment or punishment.

5. On February 8, 2022 the Plaintiff and sgt. Andrew Bauer got into a altercation about Plaintiff taking a shower after Plaintiff returned from the breakfast meal at 2:47 A.M on the North side of B-cellhouse in front of Plaintiff cell located at B-124, on information and belief what cell it was.

6. Defendant Bauer told the Plaintiff that it was time to secure and that I would not be able to shower.

(3)

7. Plaintiff told Defendant Bauer that he had been allowed to take P.M. showers for Medical reasons and if the Plaintiff could not take a P.M. shower he showered in the A.M. after breakfast, and that the Plaintiff had been itching, and scrating all night to the point of almost bleeding and needed a shower.

8. Plaintiff grabbed for his wheelchair just outside his cell. Defendant Bauer snatched Plaintiff's wheelchair back into himself as Plaintiff pulled his wheelchair. Defendant Bauer told the Plaintiff that if the Plaintiff had been filing lawsuits and grievance so much that he would be in one of the other cellhouse shower whenever he wanted.

9. After incident described in paragraph No. 8 above Defendant Lagunas walked over and pointed his Mace at the Plaintiff and told the Plaintiff not to make the situation worser

10. As Plaintiff was trying to pull his wheelchair inside his cell Defendant Bauer kept pushing Plaintiff's wheelchair into him trying to pin the Plaintiff between the cell door and the frame of the door.

11. The Plaintiff managed to get his wheelchair through his cell door and was secured in his cell.

12. At approximately 11AM Defendant Lagunas came to Plaintiff cell door, cuffed him and took him to segregation (D-seg)

13. Upon arrival at D-seg. Plaintiff was placed in a

approximately 4x4 cell in front of the officer's cage in D-seg. and not more than Twelve (12) feet from the entry door leading into D-seg.

14. Found out that Defendant Bauer, backed up from a statement from Defendant Lagunas, had wrote up a false Conduct Report charging Plaintiff with a code 117 assault on staff.

15. On information and belief, there is a video of the evidence which shows the incident, and according to policy and pro-ceedure the video Must/shall not be destroyed because all videos on assault on staff Must be kept.

16. When the Plaintiff arrived in D-seg. every officer working in D-seg. at the time, upon information and belief, knew that the Plaintiff was there in D-seg. for assault on staff.

17. It was approximately 128° degrees outside Officers who were running recreation kept running in and out the front door leaving it open letting the cold air assault Plaintiff's arthritic body. Plaintiff pleas for them to shut the door fell on deaf ears.

18. On information and belief, the officers were retaliation against the Plaintiff further because of the alledged assault on their fellow officer Defendant Bauer.

19. Plaintiff sat in that approximately 4x4 cell in front of that officer's cage from approximately 6:30 AM to approximately Eleven (11) A.M.

20. Finally Defendant Arnold had the Plaintiff moved to cell #D-113. Another inmate was moved out of Cell #113 and the Plaintiff Moved right behind him

21. The cell had not been cleaned. Their was trash all over the floor

(5)

dirt on the walls, and there was not a light in the cell.

22. On information and belief the Plaintiff was place that filthy with no light purposely in retaliation for the alledged assault on Defendant Bauer.

23. Plaintiff's plea for a light bulb and cell clean to Defendant Arnold and any offer fell on deaf ear.

24. D-seg. was infested with mice, so plentiful and bold that they were known to jump in to inmates. Just outside the Plaintiff cell Plaintiff saw a bug approximately Two (2) and a half inches that had metamorphized into a bug that Plaintiff has never seen in his life.

25. Plaintiff was scared witless that he would be bitten by a bug or mouse. The plaintiff was scared to put his feet on the floor. He slept in his wheelchair the first night with his feet proped up on the bar and could not use the bathroom accept in the morning by the light of day.

26. When Plaintiff's property was brought to him his prescribed shower chair was missing and his eyes glasses. Plaintiff has cataracts and seeing was much more difficult.

27. On information and belief, when Plaintiff's prescribed shower chair and eye glasses were confiscated it was further retaliation against the Plaintiff for the alledge assault on Defendant Bauer.

28. The confiscation of Plaintiff's eye glasses stop the Plaintiff from accessing his legal and personal paper

29. The cell Plaintiff was placed in was not up to ADA standards. Cell #D-113 did not have bars by the toilet when he sat or rised from the toilet, a raised toilet so that when he transfered from his wheelchair to the toilet, there was no room for the Plaintiff to maneuver his wheelchair.

30. Plaintiff filed a grievance about there being no light in his cell. The grievance specialist Joshua Wallen at each stage of the Appeal Process that a work Order would be put in, when all Plaintiff needed was light bulb that was supposed to be supplied by the D-seg. house Lt., Defendant McCormich.

31. The Plaintiff went approximately 21 days without a light in his cell before Defendant McCormick finally gave the light-bulb that he needed.

32. On information and belief, a light-bulb was withheld out of retaliation for the alledged assault on Defendant Bauer.

34. Furthermore during the time that Plaintiff was in Deseg. chemicals to clean where never passed out. When Plaintiff's cell was cleaned by the D-seg. Porter's approximately 23 days later the Plaintiff discovered that the dirty and stains on the walls were dried blood and fecal. The Plaintiff had been breathing up to the Porters cleaning his cell some approximately 23 days later.

35. When shower time came Plaintiff was taken to take a shower he found that it was not up to ADA standards. The Plaintiff's shower chair had already been confiscated by Defendant Bauer.

36. The shower did not have any shower chair in it, the shower

(7)

had a approximately 1 foot high concrete portition in front of it that made it wheelchair unaccessible, there were support bars for a person to grab on to who had mobility problems in case he began to fall. There was trash all over the floor and used pieces of soap. It would have been unsafe for Plaintiff use and would cause the Plaintiff to have Irreparable harm trying to use it, even when his shower chair was given back to him.

36. Plaintiff went approximately Twenty-one (21) days without a shower. Defendant Ron Neil was very aware that the shower was not up to ADA Standards. The Plaintiff wrote Defendant Neil about the none compliant ADA shower, also Plaintiff had previous Filed a complaint in Federal Court years earlier about Plaintiff's situation with shower.

37. On approximately 2/21/22 Plaintiff was seen by Medical Nurse Practioner Diane Thew. The Plaintiff had skin erruptions in the pubic area in the form of a rash. The Plaintiff it and scratched because he could bathe like every else similarly situated like him. The Nure gave Plaintiff two tubes of Miconozole Nitriate clean For his skin erruptions.

38. It was unsafe for Plaintiff to scoot along the side of his bed to the sink in his cell. The Plaintiff Mobility was such that sometime he could not move at all because of severe pain in his joints, Plaintiff has chronic ostearthritis in both ankles, both knees, lower back, right hip, neck, both shoulders, right wrist and many of his fingers. IF the Plaintiff began to fall his arthritic shoulder and hands would not be able to help him catch the fall

39. In addition to No. 38 above the plaintiff has suffered many serious falls while trying to bathe In the sink In his cell.
On 4/11/23 while trying to bathe in his cell sink Plaintiff Fell and hit his head on the sink. He layed on the floor bleeding for approximately 30 minutes before Custody staff found him.

On 8/18/16 while trying to bathe in the cell in his sink Plaintiff fell and hit his neck on the sink. He also suffer serve pain and swelling in his neck, the posterior and upper part of his back.

On 4/5/17 Plaintiff fell while trying to bathe out of his cell sink he sustained a injury to his that took the breath out of him.

On 2/12/18 while trying to bathe out of the sink in his cell he fell and suffered an injury to his thumb which caused him a trip to the outside hospital and receiving seven (7) staples in his thumb.

40. Further retaliate was purperated against Plaintiff. Approximately Twenty-Two days after leaving D-seg. Defendant Marshall Sanders and Alisha Winn intentional interfered by having Plaintiff's shower chair confiscated, Plaintiff's contact visit were taken by Pamela Bane (Defendant) and his P.M. and A.M. Medical showers were discontinued by Dr. Nancy Marthakis, when he had a act order to shower twice a day.

41. Dr. Nancy Marthakis took Plaintiff's shower saying down state did not allow her to order them. At present Plaintiff urinary Incontence and fecal incontennance. As stated his has skin erruptions. without the showers he has began to break out near his anus. He is Made to wear his soil diapers for several hours before he shower.

42. When Defendant Alisha Winn confiscated Plaintiff's shower, and Defendant Sandera, Plaintiff could not shower. The shower were he was housed "A"-cellhouse had a concrete partition in front preventing Plaintiff's wheelchair from entering I did have support bars in it; however, without a ADA shower chair it was unsafe to shower in it. (See No's. 38, 39 and 40)

43. Plaintiff notified the supply clerk in MSU that the shower chair was missing and it was unsafe to shower for him.

49. The supply clerk kept insisting the was a chair in the lower range showers when there was not

(9)

50. The shower chairs had came up missing on May 1, 2022. On information and belief, the shower chairs had be taken by other inmate who wanted a chair in their cell. I would have been easy for Custody to go cell to cell to find them but they were too lazy to do so.

51. Plaintiff went approximately 20 days without a shower. He wrote the property clerk numerous letters, the MSU HealthCare Administrater, filed a grievance, complain to OIC on each Custody shift to no avail.

52. Inmates started to complain to the Plaintiff about no showering. They told the Plaintiff that if he did not take a shower they would drag him in the shower and bathe him theirsel. Plaintiff became scared and started to bathe in the unsafe shower.

53. On 7/6/22 Plaintiff fell in the shower injuring his right groin and tailbone. On 7/11/22 Plaintiff again fell reinjuring his right groin. There were other falls also; however, the first two fall were more significant and caused Plaintiff severe pain up to, and still beyond the injury.

54. Plaintiff complained to Dr. Marthakis (Defendant) numerous times. sometimes she would examine Plaintiff, and sometimes she would not. She kept telling the Plaintiff that it was normal for one testicle to be larger than the other and the Plaintiff kept telling her that before the falls his testicle was not swollen and painful.

55. After about a year of the Plaintiff complaining of pain in his testicle Plaintiff was seen by a Nurse Practitioner who ordered a urine test and a ultra-sound and stool sample

56. The urine test showed that Plaintiff had blood in his urine and in his stool. Antibiotics were given to Plaintiff for seven days. The Plaintiff still suffered a great deal of pain, and went back

10

two more test. The Plaintiff urine test showed he still had blood in his urine and a infection that had not cleared up. He was give a different kind of antibiotic.

57. On information and belief, Plaintiff believes that he carried the infection for over a year before its detection, If Defendant Marthakis would have perform the necessary test, per blood test and (urine test) ultra-sound Plaintiff suffering would have been less,

58. The results of Plaintiff Ultra-Sound showed that Plaintiff had an enlarged and hypermic right epididymis, bilaterally hydroceles was also indentified also.

59. Another ultra-sound was performed on Plaintiff stomach because he had also complained after his groin injury and severe pain, It showed Plaintiff had Hepatic heterrogen echotexture suggesting underling lesson on his liver.

60. The Ultra-Sound technicion told the Plaintiff the she visited the prison once a month, and that she did not understand why Defendant Marthakis didn't order the blood (urine) test and ultra-sound test a year ago. The Plaintiff has a knot just below his left rib cage the size of a base-ball. As of the writting of this complaint 1/15/24 he still experiences pain in his right testicle, lower stomach and the knot in his stomach, Defendant Marthakis has given him NOTHING in the way of medicine to easy his pain and suffering.

61. Each Defendant above is sued individually and in his/her official capacity. At all times mentioned in this complaint each defendant acted under the color of state law

IV EXHAUSTION OF LEGAL REMEDIES

(62) Plaintiff used the prison grievance procedure available at Indiana

(11)

State Prison to try and solve the problems. On April 27, 2023 Plaintiff filed a grievance about Defendant Winn intentionally interfering with prescribed medical treatment – to wit his shower chair confiscation. In addition he also filed grievances on this same subject matter on August 15, 2022, August 31, 2022, 9/2, 2022 and April 14, 2022.

On April 14, 2022 filed a grievance on Defendant Bauer for intentionally interfering with prescribed medical treatment with the confiscation of his shower chair and retaliation. He, the plaintiff also filed a grievance on this same subject matter on August 15, 2022, August 31, 2022 and September 2, 2022.

On February 13, 2022 Plaintiff filed a grievance about being in a cell with no light. And on _____ plaintiff filed a multiple grievance coving every aspect of this case – to wit while in was in D-seg.

The grievance specialist did not follow policy and procedure by not assigning some of the grievance a number, by not rejecting the grievance and returning it plaintiff. It is plaintiff's belief that the grievance specialist was attempting to discourage plaintiff from filing, however the Plaintiff was persistant – the reason for more than one grievance on matters relating to this complaint.

63. V. LEGAL CLAIM

64. Plaintiff reallege and incorporate by reference paragraphs 1–62.

65. The interference with medical treatment, retaliation, Due Process, Americans with Disability Act violation, The totally of of conditions, Deliberate Indifference violated plaintiff wilson rights constitute cruel and anusal punishment, retaliation for doing a private right, interference with prescribed medical treatment, Due Process under the 8th, 1st and 14th Amendment to the constitution of the united states constitution

66. The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants declaratory and injunctive relief which plaintiff seeks.

## VI PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this court enter judgement granting plaintiff:

67. A declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States.

68. A preliminary and permanent injunction ordering defendant Ron Neil to continue Plaintiff's 7 A.M and 7 PM showers for urinary incontence and for Plaintiff's non-contact visit restored for contact visits.

69. Compensatory damages in the amount of 350 Thousand dollars against each defendant, jointly and severally.

70. Punitive damages in the amount of 500,000.00 Five-hundred thousand against Defendants Bauer, Lagunas, Arnold, Winn, Marthakis, McCormick and Sanders jointly.

71. A jury trial on all issues triable by jury.

72. Plaintiff's cost in this suit.

73. Any additional relief this court deems just, proper, and

equitable. Dated this 23rd day of January 24, 2024

Respectfully Submitted,

George W. Wilson
#918837, B-131
c/o ISP
One Park Row St.
Michigan City, IN 46360

I have read the foregoing complaint and hereby verify that the matters alledged on information and belief, and, as to those, I believe them to be true, I certify under penalty of perjury that the foregoing is true and correct.

Executed at Michigan City, Indiana on 1/23/24

GEORGE W. WILSON

(14)